**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Robert Breest

    v.                                              Civil No. 06-cv-361-SM

New Hampshire Attorney General

**O R D E R**

Pro se plaintiff Robert Breest has filed a complaint, pursuant to 42 U.S.C. § 1983, alleging that he has been denied access to biological evidence for the limited purpose of conducting DNA testing, in violation of his Fourteenth Amendment right to due process (document no. 1).  Seeking prospective injunctive relief, he brings this action against Kelly Ayotte in her official capacity as New Hampshire Attorney General.

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted.  See 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated below, I find that Breest has alleged a Fourteenth Amendment due process claim against Ayotte.

Standard of Review

In reviewing a pro se complaint, this Court must construe the pleading liberally and in favor of the pro se litigant. See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.  See Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988).  I apply this standard in reviewing Breest's complaint.

Background

In 1973, Breest was convicted of first degree murder for the death of Susan Randall and was sentenced to life imprisonment in New Hampshire.  He is currently incarcerated in Massachusetts at MCI Shirley.  His conviction and sentence were affirmed on appeal.  See State v. Breest, 116 N.H. 734, 367 A.2d 1320 (1976)

(setting forth the facts of Breest's trial and conviction). Breest's conviction rested in part on circumstantial evidence including:

> (1) testimony from witnesses who had seen a woman matching Ms. Randall's description hitchhiking in the Granite Square area of Manchester and getting into an automobile that matched the description of [Breest's] automobile, which was being driven by a person matching [Breest's] description; (2) testimony placing [Breest] in the Granite Square area at approximately the time when Ms. Randall was there; (3) hair fibers discovered in the defendant's car that were substantially similar to hair fibers from the coat worn by Ms. Randall on the night of her death; and (4) paint particles discovered on Ms. Randall's coat that were substantially similar to paint particles recovered from [Breest's] automobile.

State v. Breest, No. 72-S-789, slip op. at 1-2 (N.H. Super. Dec. 11, 2000)(citing Breest, 116 N.H. at 739-40). A jailhouse informant also testified that Breest had admitted to murdering Ms. Randall. Id. (citing Breest, 116 N.H. at 740). In addition, the jury was presented with the following evidence:

> (1) [Breest] had scratch marks on his hands when he was interviewed by the police approximately two weeks after Ms. Randall was killed; (2) Ms. Randall had been choked by her killer; (3) Ms. Randall's fingernails had dried blood underneath them, indicating that she had scratched the hands of her killer; (4) police investigators sent clippings from Ms. Randall's fingernails to the FBI laboratory in Washington, D.C. for testing of the dried blood found underneath them; and (5) the blood underneath Ms. Randall's fingernails was Type A, the same as both Ms. Randall and [Breest].

3

Id. at 2 (citing Breest, 116 N.H. at 738, 752).

Beginning in 2000, Breest sought access to DNA testing through the New Hampshire Superior Court (Merrimack County). On December 11, 2000, the court granted his "Motion to Reopen, Bring Forward, and Order Mitochondrial DNA Testing of Susan Randall's Fingernails." Breest, No. 72-S-789, slip op. at 1. In granting the motion, the court reasoned that (1) Breest was not at fault for failing to present or request DNA evidence at trial, because DNA evidence had not been discovered at that time; (2) the DNA evidence at issue would have been both admissible at trial and highly probative of his guilt or innocence; and (3) a favorable DNA test probably would result in a different outcome at a new trial. Id. at 4-6.

The court allowed three tests to be conducted by Cellmark Diagnostics, a laboratory located in Germantown, Maryland and allegedly selected by the State. The first test (13 CODIS STR[1] DNA test) was declared inconclusive by Cellmark. Breest disputes the results and contends that four DNA experts interpreted Cellmark's results and determined that he was excluded or that

---

[1] I construe "CODIS" to mean "Combined DNA Index System, the FBI's national DNA identification index system." See N.H. Rev. Stat. Ann. § 651-C:1(I). I construe "STR" to mean short tandem repeat.

further testing was required.[2]  The second test (4 Loci Y-

---

[2] In support of his claims, Breest has attached letters from four DNA experts.  In a letter dated February 13, 2002, William M. Shields, Professor of Biology at the State University of New York, states that Breest is excluded by the Cellmark DNA testing.  In a letter dated March 18, 2002, Dr. Randall Libby of GeneQuest states that in the Cellmark tests there "appear to be non-matching alleles at several loci" which should be explored further."  In a letter dated August 14, 2002, Dr. Bruce Johnson of Boston University and Dr. Bert Ely of the University of South Carolina state that they "consider critical areas of the Cellmark data (especially allele identification) to be poorly explained (or not explained at all)."  They further state that they are "surprised that the data as presented in [Breest's] case could possibly have been reviewed by anyone with a background in molecular biology and not seriously questioned."  Attached to the letter by Drs. Johnson and Ely is a copy of their comments and a list of the following five serious flaws found in the Cellmark data:

> (1) Allele 26 cannot be considered to be present in the biological samples collected from the victim . . . and [t]herefore, it cannot be used to include Mr. Breest in this analysis; (2) The inclusion of any individual based on three out of 13 alleles grossly distorts the statistical integrity expected of a genetic analysis; (3) The frequent occurrence of "weak" results in the DNA analysis of the biological samples greatly diminishes the fidelity of any data reported.  Indeed, such data could never be published in any referred scientific journal; (4) Changes in scales in the various plots indicate a major lack of uniformity in the data, For example, it is possible to enhance an artifact peak by increasing the scale, which we believe has been done; (5) One of the most glaring shortcomings of the data presented by Cellmark is the poor labeling of alleles relative to the plots.  It is very difficult to determine which peak represents which allele.  Thus, the question: how can such data be properly interpreted?

Chromosome test) was also declared inconclusive by Robin Cotton, Ph.D. of Cellmark. Breest contends that his DNA expert, Dr. Shields, determined that he was excluded by the second test. The third test (4 Loci Y-Chromosome test) was conducted by Cellmark's new laboratory director, Lewis Maddox, Ph.D. Breest contends that "the third test netted basically the same test results as the second, except that Dr. Maddox drew a line through alleles that did not match Robert Breest, and declared the balance as a match." He further contends that "when submitting the mathematical analysis, [Maddox] determined that the third test results he declared a match, matched 10% of the population, or one in ten."

Breest's request for a fourth test was denied by the superior court by order of October 19, 2004. In denying a fourth test, the court reasoned that:

> [T]hree rounds of DNA testing have been conducted by Cellmark comparing tissue found under the fingernails of the victim, Susan Randall, with a known sample from the defendant. The first two rounds of testing did not exclude the defendant as the person whose DNA was under the victim's fingernails. The third round of testing was a Y chromosome test which compared alleles at four loci. The result of this test was that the defendant's DNA matched that of the fingernail DNA at all four loci. Frequency testing suggests that only about one in ten men would have those four alleles at those four loci. Defendant now requests another Y chromosome test which would compare alleles at twelve loci.

> Defendant's request is DENIED as he has not met his burden of demonstrating why the tests already conducted are not accurate or why further testing would demonstrate his actual innocence or would result in a different verdict after trial. This is especially true where the test results of the previous three tests are consistent with the evidence presented against the defendant at trial and with the jury's verdict of guilty.

State v. Breest, No. 72-S-789, slip op. at 1 (N.H. Super. Oct. 19, 2004).

While Breest's state court proceedings were pending on June 15, 2004, the Governor of New Hampshire signed into law House Bill 640, thereby enacting New Hampshire Rev. Stat. Ann. ("RSA") 651-D (permitting a person to petition the court for post-conviction DNA testing of biological material under certain circumstances). See N.H. Rev. Stat. Ann. § 651-D. RSA 651-D:2 (I) provides, in relevant part, that "[a] person in custody pursuant to the judgment of the court may, at any time after conviction or adjudication as a delinquent, petition the court for forensic DNA testing of any biologic material." See N.H. Rev. Stat. Ann. § 651-D:2(I). Breest appears to allege that he has complied with the requirements set forth under RSA 651-D:2(I) but nevertheless has been denied access to DNA evidence.

He now brings this action seeking injunctive relief in the form of access to biological evidence for the limited purpose of

conducting DNA testing, including 13 CODIS STR and 10 loci Y-chromosome testing, at an accredited laboratory of his choice. According to Breest, the DNA evidence at issue is in possession of the New Hampshire Department of Safety, Division of State Police, Forensic Laboratory, and Ayotte has authority to release such evidence for testing.

Discussion

I.   Section 1983 Claim

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law. See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981); accord Conn v. Gabbert, 526 U.S. 286, 290 (1999).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  The premise of Breest's Section 1983 action is that Ayotte has denied him access to biological evidence for purposes of DNA testing in violation of his Fourteenth Amendment right to due process.

    A.   Cognizance of Section 1983 Claim

An issue arises as to whether Breest's claim is cognizable

under Section 1983 or whether it "necessarily implies" the invalidity of his underlying state court conviction in contravention of the Supreme Court's ruling in Heck v. Humphrey, 512 U.S. 477 (1994)(holding that a litigant cannot proceed under Section 1983 if success on his claim would necessarily imply the invalidity of the fact or duration of his conviction or sentence).  Several circuit and district courts have considered the issue of whether a claim for post-conviction access to physical evidence is cognizable under Section 1983, and their decisions do not reveal an obvious consensus.  See Savory v. Lyons, No. 06-1296, WL 3423072 at *3-4 (7th Cir. Sept. 11, 2006)(finding claim for post-conviction access to physical evidence to be cognizable under Section 1983); Grayson v. King, 460 F.3d 1328, 1342-43 (11th Cir. 2006) (finding claim for post-conviction access to biological evidence to be cognizable under Section 1983 but rejecting due process claim under Brady v. Maryland, 373 U.S. 83, 87 (1963) and its progeny); Bradley v. Pryor, 305 F.3d 1287, 1290 (11th Cir. 2002)(finding claim for post-conviction access to biological evidence for DNA testing purposes to be cognizable under Section 1983); Harvey v. Horan, 278 F.3d 370, 375 (4th Cir. 2002)(rejecting due process claim for post-conviction access to biological evidence for DNA testing);

Wade v. Brady, Civ. No. 04-12135-NG, 2006 WL 3051770 at *6 (D. Mass. Oct. 27, 2006)(holding that Section 1983 claim seeking DNA testing of biological evidence was not barred under Heck); Alley v. Key, 431 F. Supp. 2d 790, 800-03 (W.D. Tenn. 2006)(holding there is no post-conviction due process right to biological evidence for purposes of DNA testing); Godschalk v. Montgomery County Dist. Attorney's Office, 177 F. Supp. 2d 366, 370 (E.D. Pa. 2001) (recognizing a post-conviction due process right of access to evidence for DNA testing).

Like the plaintiffs in Savory, Bradley and Wade, Breest requests only the opportunity to test DNA evidence currently in the state's possession. Nothing about this request necessarily implies anything about his underlying state court conviction. The results of the testing could be inconclusive or inculpatory. Moreover, if testing yields exculpatory results, his conviction would stand unless successfully challenged in a separate action, brought at a future date, and alleging a different constitutional violation altogether. Accordingly, I conclude that his claim is cognizable under Section 1983 for purposes of preliminary review.

B.   Right of Access to DNA Testing

Although the right to DNA testing is largely unexplored, certain courts have held that a convicted criminal defendant has

10

a due process right to post-conviction testing of DNA evidence. See Wade, Civ. No. 04-12135-NG, 2006 WL 3051770 at *6 (holding that due process principles underlying Brady, 373 U.S. at 87, support a DNA testing right in both pre-trial and post-conviction settings); Godchalk, 177 F. Supp. 2d at 370 (holding that a state prisoner has a due process right to access biological evidence). In Godchalk, the court cited the well-established rule that the prosecution's pretrial suppression of evidence favorable to a criminal defendant "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Godchalk, 177 F. Supp. 2d at 368 (quoting Brady, 373 U.S. at 87). The court concluded that this rule was controlling in the context of a Section 1983 action involving a post-conviction request for access to DNA evidence. Id. at 370. Applying the definition of "materiality" that the Supreme Court set forth in United States v. Bagley, 473 U.S. 667 (1985), the court held that a state prisoner has a due process right to access biological evidence if there is a "reasonable probability" that the results of any DNA testing that could be performed on that evidence would have affected the outcome of the state court proceedings if those results had been available at the time of the prisoner's

conviction. <u>Id.</u>

In this action, Breest alleges a Fourteenth Amendment due process violation arising from the denial of the right to DNA testing. To the extent there is a reasonable probability that the results of the DNA testing requested by Breest would have affected the outcome of his state court proceedings if those results had been available at the time of his conviction, I conclude that he has alleged a cognizable due process claim. For purposes of preliminary review, I find that he has alleged sufficient facts to state a Fourteenth Amendment due process claim against Ayotte.

## II. <u>Eleventh Amendment Immunity</u>

The complaint seeks prospective injunctive relief for wrongs committed by Ayotte as a state actor in her official capacity. It is well-settled that Eleventh Amendment immunity bars a federal court from awarding monetary damages against state officers sued in their official capacities. <u>See</u> <u>Redondo-Borges v. United States HUD</u>, 421 F.3d 1, 7 (1st Cir. 2005). However, Eleventh Amendment immunity does not bar claims for prospective injunctive relief against state officers in their official capacities. <u>Id.</u> "Nor does that doctrine bar relief (whether in the form of money damages or an injunction) against [state

officers] in their individual capacities.  Id. (citations omitted).  Because Breest seeks only prospective injunctive relief against Ayotte in her official capacity, I conclude that his claim is not barred under the Eleventh Amendment.

## Conclusion

For the reasons stated above, I conclude that Breest has alleged a Fourteenth Amendment due process claim against Ayotte.

As I find that plaintiff has stated a claim upon which relief may be granted, I order the complaint served on the defendant.  The Clerk's office is directed to serve the New Hampshire Office of the Attorney General (AG), as provided in the Agreement on Acceptance of Service, copies of this order and the complaint and supporting documents (document no. 1).  See LR 4.3(d)(2)(C).  Within thirty days from receipt of these materials, the AG will submit to the court an Acceptance of Service notice indicating whether defendant has authorized the AG's office to receive service on her behalf.  When the Acceptance of Service is filed, service will be deemed made on the last day of the thirty-day period.

The Clerk's office is instructed to complete service on this individual by sending to her, by certified mail, return receipt requested, copies of these same documents.

The defendant is instructed to answer or otherwise plead within thirty days of acceptance of service.  <u>See</u> Fed. R. Civ. P. 12(a)(1)(A).

Plaintiff is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on the defendant by delivering or mailing the materials to her or her attorneys, pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

James R. Muirhead
United States Magistrate Judge

Date: January 3, 2007

cc:   Robert Breest, *pro se*